UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


HARRIS BUILDERS, L.L.C.                    CIVIL ACTION

VERSUS                                     NO: 11-569

URS CORPORATION                            SECTION: "J" (5)

**ORDER AND REASONS**

Before the Court are Defendant's Rule 12(c) Motion for Judgment on the Pleadings to Dismiss Plaintiff's Complaint (Rec. Doc. 12), Plaintiff's Opposition (Rec. Doc. 13), Defendant's Reply (Rec. Doc. 21), and Plaintiff's Sur-reply (Rec. Doc. 27). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be GRANTED IN PART and DENIED IN PART, as set forth below.


**PROCEDURAL HISTORY AND BACKGROUND FACTS**

Plaintiff Harris Builders, L.L.C. ("Harris") initiated this lawsuit alleging that Defendant URS Corporation ("URS") is liable to Harris for damages it has incurred due to URS's acts regarding a construction contract to build a warehouse for the Port of

1

South Louisiana (the "Owner").  The complaint, which was filed on March 11, 2011, alleges that Harris was the general contractor for the project and entered into a public contract (the "Contract") with the Owner worth $5,994,600.  URS is alleged to have prepared the plans and specifications for the project and to have served as an engineer, consultant, construction manager, and representative of the Owner during the bid, Contract, and construction phases of the project.

Harris's complaint alleges that URS intentionally and negligently violated a number of duties owed to Harris, which caused Harris economic harm.  Among those duties alleged are URS's duties to manage the project in a fair manner, approve completed work when warranted, develop plans and specifications to appropriate standards of quality, not to interfere with Harris's ability to perform the project, and to timely and fairly review and approve additional time and compensation for work performed by Harris that is outside the scope of the plans, specifications, and Contract documents.  Harris alleges that as a result of URS's actions, it has incurred damages, including liquidated damages, extended overhead costs, and general condition costs.  Harris alleges that URS continues to invoice the Owner for URS's work, and the Owner continues to use funds

earned by Harris to pay URS for its improper conduct.

The complaint contains three counts. Count I arises under "Louisiana Civil Code articles 2315 et seq." Rec. Doc. 1, at 6, ¶ 26. Count II arises under "La. Rev. Stat. 9:2771." Id. at 8, ¶ 33. Count III arises under "Louisiana Civil Code article 2298." Id. at 9, ¶ 42. Additionally, all three counts are said to arise under "other aspects of Louisiana law." Id. at 6, ¶ 26; at 8, ¶ 33; at 9, ¶ 42. Harris demanded a jury trial. URS filed the instant motion for judgment on the pleadings, which has been noticed for submission on February 29, 2012.

## THE PARTIES' ARGUMENTS

URS argues that the entire action should be dismissed. URS characterizes Count I as a claim for tortious interference with contract that, under the facts pleaded, finds no basis under Louisiana law. URS avers that this count is focused upon URS's alleged interference with Harris's performance and completion of the construction project. It argues that under Louisiana law, tortious interference with contract is only recognized where a corporate officer intentionally causes his own corporation to breach the corporation's contract with the complaining party. Because there is no allegation of any contract between Harris and

3

URS, URS argues that the tortious interference claim in Count I should be dismissed.  URS also argues that Harris's claim of negligent interference fails as a matter of law.

As to Count II, URS asserts that the statute cited in the complaint, Louisiana Revised Statutes section 9:2771, does not provide a cause of action, but rather provides only for the statutory immunity of a contractor in certain circumstances.  URS argues that the statute is purely defensive in nature, and therefore Harris may not use it as the basis of its lawsuit.  URS argues that Count III, a claim for unjust enrichment, should be dismissed because there are other legal remedies available to Harris and because any enrichment in this case was justified.  URS argues that Harris has an available breach of contract claim against the Owner, which forecloses any remedy for unjust enrichment.  Further, URS argues, because other counts have been asserted in the complaint, the unjust enrichment count should be dismissed.  Additionally, it argues that any enrichment was justified because URS's contract with the Owner permitted the actions URS took.

Harris argues that Louisiana law recognizes the causes of action in its complaint and that it has pled sufficient facts to state claims in each count.  Rather than respond to URS's

4

arguments concerning a claim for tortious interference with contract under Louisiana law, Harris characterizes Count I as a claim for negligence and negligent professional undertaking, which it alleges have long been recognized under Louisiana law. Harris argues that the facts alleged state a claim for negligent professional undertaking:  URS's defective plans and specifications caused Harris economic injury, it was foreseeable that Harris would be injured by URS's acts, and there is a closeness between Harris's injury and URS's actions based on URS's approval of Harris's payment applications and URS's management of the construction project.

Concerning Count II, Harris argues that section 9:2771 does not merely grant immunity, but also implicitly provides a cause of action.  It avers that it was "held liable" within the meaning of the statute because it was required to re-perform work rejected by URS and was charged additional administration and engineering fees by URS.  It also argues that it needs the statute to support its other claims and defeat URS's defenses. As to the unjust enrichment claim in Count III, Harris argues that where the Contract is not pled in the complaint, there is no way to ascertain whether Harris could bring a breach of contract action against the Owner, and therefore no way to tell whether

other legal remedies are available so as to foreclose an unjust enrichment claim in this case.  Additionally, there is a factual issue as to whether URS's actions under its contract with the Owner were justified so as to defeat an unjust enrichment claim. Finally, Harris points out that the complaint states the unjust enrichment claim as providing recovery to the extent there is no other available legal remedy.

In reply, URS argues that Harris now improperly attempts to add a new cause of action, or to convert the tortious interference claim in Count I into a new claim for negligence and negligent professional undertaking.  URS argues that this untimely attempt to add a new cause of action should be rejected and that Harris has not shown good cause for amending his complaint beyond the expiration date for filing pleading amendments.  As to Count II, URS asserts that Harris cannot be "held liable" because URS has not asserted a counterclaim against Harris.  Therefore, URS argues, section 9:2771 does not provide a cause of action.  As to Count III, in support of its argument that other legal remedies are available, URS argues that Harris has put the Contract at issue in the complaint, and that URS could submit a copy to the Court if necessary.

In its sur-reply, Harris argues that the complaint fairly put URS on notice of its cause of action for negligence, including a claim for negligent professional undertaking. Thus, Harris asserts, any amendment to the complaint would not add a new cause of action, but would only clarify what is already stated in Count I. Further, Harris adverts to the fact that URS waited to file the instant motion until two months after the deadline to amend pleadings to contend that Count I was never properly pled. Lastly, Harris argues that it was held liable in that it was legally responsible for re-performing work required by URS, and thus Count II properly brings a claim under section 9:2771.

## DISCUSSION

**A. Legal Standard**

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A motion brought pursuant to Fed.R.Civ.P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." Hebert Abstract

Co., Inc. v. Touchstone Props., Ltd., 914 F.2d 74, 76 (5th Cir. 1990).  The standard for dismissal for a Rule 12(c) motion for judgment on the pleadings is the same as that for dismissal for failure to state a claim under Rule 12(b)(6).  Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004).

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005).  The allegations "must be simple, concise, and direct."  FED. R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, __U.S.__, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  Lormand v. U.S.

8

Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996).   The court is not, however, bound to accept as true legal conclusions couched as factual allegations.   Iqbal, 129 S. Ct. at 1949-50.

**B.   Count I:   Tort Allegations**

Based on URS's characterization of Count I as a claim for tortious interference with contract, URS argues that the count must be dismissed as a matter of law.   Louisiana law recognizes a very limited action for tortious interference with contract.   The Louisiana Supreme Court in 9 to 5 Fashions, Inc. v. Spurney, 538 So. 2d 228, 229 (La. 1989) recognized a corporate officer's duty to refrain from intentional interference with contractual relations between his corporation and other persons unless the interference is supported by a reasonable justification.   In reaching this conclusion, the court initially noted that Louisiana law had not provided a cause of action for tortious interference with contract.   Id. at 231.   However, after examining the law, the Court annulled its previous jurisprudence "barring absolutely any action based on a tortious interference with a contract" insofar as such prior case law conflicted with the opinion.   Id. at 234.   Still, the court expressly declined to adopt the entire common law doctrine of tortious interference.

Id.  Based on the limited cause of action recognized in Spurney, Harris does not have a tortious interference claim because this is not a suit against a corporate officer alleging that the officer intentionally caused his corporation to breach its contract with the plaintiff.

Louisiana courts[1] and the Fifth Circuit[2] have consistently refused to extend the action for tortious interference beyond the limited scope recognized in Spurney.  Because Louisiana law does not recognize an action for tortious interference under the instant facts, any claim for tortious interference with contract presented by Count I must be dismissed.[3]  However, the next question is whether Count I states any other cause of action under Louisiana law so as to avoid dismissal of the entire count.

_____

[1] See, e.g., Belle Pass Terminal, Inc. v. Jolin, Inc., 618 So. 2d 1076, 1080 (La. App. 1st Cir. 1993) (stating that Spurney "applies to a corporate officer interfering with his employer's corporate contract with third persons"); A & W Sheet Metal, Inc. v. Berg Mech., Inc., 653 So. 2d 158, 165 (La. App. 2d Cir. 1995) ("Louisiana courts have limited the Spurney decision to its facts."); Spears v. Amer. Legion Hosp., 780 So. 2d 493, 497 (La. App. 3d Cir. 2001) ("Where the interference alleged is beyond the cause of action created in [Spurney], the trial court is correct in denying the claim.").

[2] See Amer. Waste & Pollution Control Co. v. Browning-Ferris, Inc., 949 F.2d 1384, 1391 (5th Cir. 1991) (discussing Spurney and concluding, "It took the Louisiana Supreme Court almost 90 years to recognize a quite narrow cause of action for tortious contractual interference; it is not for this diversity court to expand that cause of action in the face of Louisiana's expressed unwillingness to do so."); Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey, 183 F.3d 453, 457 (5th Cir. 1999) (affirming dismissal of tortious interference claim where there were no allegations of facts satisfying the elements of a Spurney cause of action).

[3] Notably, Harris does not argue that it has a valid claim for tortious interference with contract.

Looking at Count I of the complaint, the phrase "tortious interference" cannot be found.  The count opens with a statement that the claims arise under "Louisiana Civil Code articles 2315 et seq."  Rec. Doc. 1, at 6, ¶ 26.  This is a general invocation of Louisiana tort law,[4] which is followed by more specific facts in Count I.  Harris alleges the following:

> In its role as engineer, consultant, construction manager, and Owner representative, and through the actions set forth above in paragraphs 1 through 24 above, URS intentionally and negligently interfered, and continues to interfere, with Harris's perfromance [sic] and completion of the Project, all to URS's benefit and to the detriment of Harris.

Id. at 7, ¶ 27.  Read literally, the complaint does not allege that URS's actions interfered with Harris's *Contract* with the Owner, but rather with Harris's ability to "perform" and "complete" "the *Project*."  However, "the Project" refers to construction under the Contract between Harris and the Owner.[5]  Count I further alleges that Harris "is entitled to recover all payments made by the Owner to URS caused and arising from URS's intentional and negligent acts."  Id. at 8, ¶ 31.  This constitutes an allegation that URS's actions caused the Owner to

_____

[4] Louisiana Civil Code article 2315 is "the 'fountainhead' of tort responsibility in Louisiana."  Veazey v. Elmwood Plantation Assocs., Ltd., 650 So. 2d 712, 717 (La. 1994).

[5] The Contract was for construction of the "Project."  Rec. Doc. 1, at 2-3, ¶ 5.

make payments to URS, which interfered with Harris's contractual right to receive payments from the Owner.  This allegation smacks of tortious interference:  URS's actions tampered with Harris's contractual right to payment from the Owner.  The complaint further alleges that URS owed a duty to Harris to approve Harris's work, develop good-quality plans and specifications, not interfere with Harris's ability to perform the project, only require Harris to perform work pursuant to the plans, and timely and fairly review and approve compensation for Harris's work. Id. at 3-5, ¶¶ 10-12, 15-16.

Based on these allegations, a defendant would mainly be apprised of a claim for tortious interference with contract.  In Spurney, 538 So. 2d at 230-31, a corporate uniform supplier that had a contract with a corporation running the 1984 Louisiana World's Fair sued the latter corporation's CEO, alleging that the CEO's acts caused the plaintiff delay and difficulty in performing its contract with the CEO's corporation and that the CEO acted intentionally to delay the performance.  The Louisiana Supreme Court stated that "[i]n effect, without labeling the delict," the plaintiff was urging the court "to recognize an action that it has refused to allow since 1902, viz., an action for tortious interference with a contractual relationship."  Id.

12

at 231.[6]  Likewise, the complaint in this case essentially alleges that Harris's ability to perform its obligations as general contractor to the Owner was delayed and rendered more difficult by URS's actions.  These difficulties are alleged to have resulted from, *inter alia*, URS's failure as a construction manager to develop good-quality project specifications, insistence on Harris's performance of unnecessary work that delayed the construction project, and failure to approve certain payments by the Owner to Harris.  The gist of the complaint is that URS's duties as a construction manner included the obligation to manage the construction project in a way that would allow Harris to perform its own contractual duties owed to the Owner.  This unlabeled tort largely bespeaks a claim for tortious interference.  The question, then, is whether Count I also can be read as stating a plausible claim for negligence or negligent professional undertaking.

The Court concludes that, fairly read, it does.  In ruling on the instant motion, the Court must draw all reasonable inferences in Harris's favor.  See Lormand, 565 F.3d at 232.

---

[6] Specifically, the CEO allegedly had not timely appointed an employee with uniform supply coordination experience, the CEO's corporation did not officially sign the uniform contract with the plaintiff until days before the fair, and therefore the plaintiff supply company ordered more material than what was ultimately required, causing it to experience a loss of profits. Spurney, 538 So. 2d at 230.

Harris invoked the law of tort in Civil Code article 2315 generally. Rec. Doc. 1, at 6, ¶ 26. If, accepting the factual allegations as true, Harris states a plausible claim for negligence, Count I survives URS's motion for judgment on the pleadings. The Court finds that Louisiana jurisprudence recognizes an action for negligent professional undertaking, the essential elements of which are established based upon the facts alleged.

In Colbert v. B.F. Carvin Construction Co., 600 So. 2d 719 (La. App. 5th Cir. 1992), the court recognized the distinction between tortious interference and negligent professional undertaking. At issue in Colbert was the validity of a general contractor's counterclaim against an architect in the context of a public school renovation project. The court stated that although the general contractor had pled tortious interference with contract, it had also pled a cause of action based on the architect's allegedly negligent professional undertaking with the school board. Id. at 721. Under Spurney, the Colbert court noted that there was no remedy for negligent interference with contract. 600 So. 2d at 722. However, the court proceeded to distinguish and recognize a tort based upon the negligent professional undertaking of an architect. Id. at 723. The court

14

reviewed case law from Louisiana and other states, noting that it had previously recognized such a cause of action by a general contractor against an engineering firm, and that other Louisiana appellate courts had recognized subcontractor claims against architects with whom the subcontractors lacked privity.  Id. at 723-24.

The court noted that the rationale for imposing liability is the degree of control exerted by the supervising architect over the contractor, specifically, "[t]he power of the architect to stop the work alone [that] is tantamount to a power of economic life or death over the contractor."  Id. at 724 (quoting United States v. Rogers & Rogers, 161 F. Supp. 132, 136 (S.D. Cal. 1958)) (emphasis removed).  In concluding that the petition stated a cause of action, the court adopted a balancing test to determine whether third parties not in privity may sue an architect:

> "[T]he extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to defendant's conduct, and the policy of preventing future harm."

Id. at 725 (quoting Westerhold v. Carroll, 419 S.W.2d 73, 81-82 (Mo. 1967)).  Other cases cited by the court in Colbert have

recognized similar negligence claims under Louisiana law.  See Standard Roofing Co. of New Orleans v. Elliot Constr. Co., Inc., 535 So. 2d 870, 880 (La. App. 1st Cir. 1988) (recognizing that an architect has a duty to third parties that arises because the architect is deemed to know that its services are for the protection of third parties who "must rely on the architect's expertise in providing adequate supervision, plans, and specifications"); S.K. Whitty & Co., Inc. v. Laurence L. Lambert & Assocs., 576 So. 2d 599, 601 (La. App. 4th Cir. 1991) (finding that Louisiana law provides a cause of action for pre-construction negligence against an engineer who prepared construction plans and specifications).

The Court concludes that whether styled "negligent professional undertaking" or simply "negligence," Louisiana law recognizes a cause of action for negligence by Harris, as general contractor, against URS.  Although a good deal of the previously cited case law specifically refers to architects, the reasoning therein applies to URS in this case, whom the complaint alleges to be an "engineer, consultant, construction manager, and Owner representative."  Rec. Doc. 1, at 3, ¶ 9.  Indeed, the court in S.K. Whitty, 576 So. 2d at 601, specifically recognized a cause of action against an engineer—which URS is alleged to be—who

16

negligently prepares plans and specifications for a construction project.  Further, based on the facts alleged, Harris's complaint passes muster under the balancing test adopted in Colbert.  URS's construction plan preparations and instructions to Harris to redo certain work were acts that URS had to have known would directly affect Harris.  It was foreseeable and fairly certain that Harris would suffer economic harm if URS managed the project poorly, and URS's development of project specifications directly affected the work Harris performed.  In short, Harris asserts a high degree of economic control by URS that was the purpose recognized in Colbert as supporting a cause of action.

The language of the complaint, fairly read, states a Colbert-type negligence claim. Although Count I is largely phrased in terms of "interference" with the project, the count contains allegations similar to those in Colbert, 600 So. 2d at 721, which that court construed as constituting both a tortious interference and a "negligent professional undertaking" tort.  In that case, the claimant alleged that the architect failed to prepare adequate plans and specifications that would reasonably notify a bidding general contractor of the scope of work to be done, failed to furnish instructions and clarifications during the project, pressured the claimant to perform extra work, and

17

caused the claimant to provide maintenance services not contemplated by the contract between the school board and the claimant.  Id. at 720-21.  Similarly, in this case, Harris alleges that URS failed to prepare adequate plans and specifications and required Harris to re-perform certain work that was unnecessary.  Rec. Doc. 1, at 4, ¶ 14; at 7, ¶ 29; at 8, ¶ 34.

In light of the foregoing, the Court concludes that Count I states a claim for negligence beyond any legally insufficient claim of tortious interference with contract.[7]  Therefore, URS's argument that Harris now attempts to convert his cause of action to one for negligent professional undertaking is not persuasive.  Even so, Harris will be granted leave to amend its complaint to *clarify* the cause of action discussed herein.  Applying the "good cause" test for permitting untimely pleading amendments reveals that good cause exists for permitting such an amendment.[8]  Harris

---

[7] Harris has asserted not only negligence, but also intentional tortious acts.  Thus, Count I survives URS's motion as to both intentional and negligent professional undertaking.

[8] See S&W Enter., L.L.C. v. SouthTrust Bank of Ala., NA, 315 F.3d 533, 536 (5th Cir. 2003) (framing the test to consider "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice."); see also id. ("Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."); FED. R. CIV. P. 16(b) (providing that a scheduling order "may be modified only for good cause and with the judge's consent").  The deadline for amending pleadings passed on December 22, 2011.  Rec. Doc. 11, at 1.

did not previously amend because it validly believed it had stated a claim for negligence.  The amendment will provide clarification, though it may prejudice URS to the extent the complaint, as it has been worded, largely bespeaks tortious interference, as opposed to the valid theory of negligence recognized by the Court.  However, any such prejudice can be cured by the Court's recent order that the parties jointly prepare a detailed discovery plan, which implies that URS will be able to conduct further discovery.  That order also continued the trial.  Rec. Doc. 33.  Furthermore, even to the extent the complaint could have provided better notice of the precise negligence theory relied upon, after answering in August 2011, URS waited until February 2012 to file its Rule 12(c) motion—several months after the deadline for Harris to amend its complaint.[9]

## C.  Count II:  Louisiana Revised Statutes § 9:2771

Count II alleges that the claims therein "arise under La. Rev. Stat. 9:2771 and other aspects of Louisiana Law."  Rec. Doc. 1, at 8, ¶ 33.  Count II reiterates certain allegations made elsewhere in the complaint and further alleges, *inter alia*, that

_____

[9] See Rec. Doc. 9 (answer); Rec. Doc. 12 (motion for judgment on the pleadings); Rec. Doc. 11 (scheduling order setting December 22, 2011 deadline for amending pleadings).

URS refuses to compensate Harris for extra work performed, has invoiced the Owner for URS's time inspecting Harris's work, has invoiced the Owner for time URS incurred in requiring Harris to perform items not recognized in the industry, and is liable to Harris for resultant damages.  Rec. Doc. 1, at 8-9, ¶¶ 35-40. The cited statute reads, in pertinent part:

> No contractor . . . shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications. . . .

LA. REV. STAT. § 9:2771.  Louisiana courts have recognized that this statute provides an affirmative defense of immunity to contractors in certain circumstances.  See Morgan v. Lafourche Recreation Dist. No. 5, 822 So. 2d 716, 721-22 (La. App. 1st Cir. 2002); Lyncker v. Design Eng'g, Inc., 988 So. 2d 812, 814-15 (La. App. 4th Cir. 2008); see also LaForge v. ECC Operating Servs., 2008 WL 5082895, at *2-3 (E.D. La. Nov. 25, 2008).  The Court will not extend the meaning of this statute beyond either the interpretation espoused in Louisiana jurisprudence or the literal language that "[n]o contractor shall be liable" in certain situations.  LA. REV. STAT. § 9:2771.  Harris incorrectly argues that Austin Homes, Inc. v. Thibodeaux, 821 So. 2d 10 (La. App. 3d

Cir. 2002) recognized the statute as a basis for recovery.  In that case, although a general contractor sued homeowners for unpaid costs, the court recognized the possibility that the general contractor could use the statute as an affirmative defense against the homeowners' counterclaim for breach of contract.  Id. at 13, 15.

Harris argues that it has been held liable within the meaning of the statute, in that it has been required to pay URS additional administration and engineering fees in conjunction with the re-performance of work that URS should have accepted as compliant.  Accepting Harris's definition of liability as "legal responsibility," Harris was not "held liable" within the meaning of the statute through its re-performance of work and incurrence of resultant damages.  To the contrary, Harris asserts that these damages were unjustly suffered.  If these damages were unjustly suffered, in that Harris should not have had to re-perform the work, it actually had *no legal responsibility* and thus was not "held liable" by URS.  Harris has not been held liable so as to implicate this statute as a cause of action.[10]  The statute

---

[10] Further, the Court is not persuaded by Harris's curious argument that if Count II is dismissed, Harris's ability to rely on the statute could be "issue precluded" such that the statute provides no protection to Harris.  To the contrary, a finding that the statute does not create a cause of action does not mean that the statute cannot serve its proper function of providing an immunity defense.

provides a defense, not a claim.  The Count II claim under Louisiana Revised Statutes section 9:2771 must be dismissed.

## D.  Count III:  Unjust Enrichment

Count III states that the claims therein "arise under Louisiana Civil Code article 2298, and other aspects of Louisiana law." Rec. Doc. 1, at 9, ¶ 42.  It states that URS is liable to Harris for all amounts URS has received from the Owner based on its improper actions, to Harris's detriment.  <u>Id.</u> at 10, ¶ 43. It asserts that URS has been unjustly enriched and that URS is liable "[t]o the extent that Harris has no remedy of law to recover the extent of its damages." <u>Id.</u>, ¶ 44.  Concerning a cause of action for unjust enrichment, Louisiana Civil Code article 2298 provides, in pertinent part:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. *The remedy declared here is subsidiary and shall not be available if the law provides another remedy* for the impoverishment or declares a contrary rule.

LA. CIV. CODE art. 2298 (emphasis added).  The import of the statute is that "[u]njust enrichment is only applicable to fill a gap in the law where no other remedy is provided for by law." <u>Nature Conservancy v. Upland Props., LLC</u>, 48 So. 3d 1257, 1261 (La. App. 1st Cir. 2010).

In this case, there is no gap in the law, and there is a legal remedy in tort available to Harris.  Whether or not that claim is ultimately successful is immaterial.  <u>Westbrook v. Pike Elec., L.L.C.</u>, 799 F. Supp. 2d 665, 672 (E.D. La. 2011).  The fact that Harris has pled an action in tort, which states a claim, demonstrates that another legal remedy is available.  <u>See Walters v. MedSouth Record Mgmt., LLC</u>, 38 So. 3d 243, 244 (La. 2010) (where the plaintiff pled an action in tort, he failed to state a cause of action in unjust enrichment, notwithstanding that the tort claims had been held to be prescribed).  The Court need not reach URS's other arguments that Harris has another available legal remedy in the form of a suit against the Owner under the Contract and that any enrichment was justified based on URS's performance of its contract with the Owner.  Count III must be dismissed.

**CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Defendant's Rule 12(c) Motion for Judgment on the Pleadings to Dismiss Plaintiff's Complaint (Rec. Doc. 12) be **GRANTED IN PART and DENIED IN PART**.  It is **GRANTED** insofar as any claim for tortious interference with contract in Count I, the claim under Louisiana

23

Revised Statutes section 9:2771 in Count II, and the claim for unjust enrichment in Count III are dismissed with prejudice.  It is **DENIED** insofar as Count I states a claim for negligence upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to amend its complaint to clarify the claim in Count I within 10 days from the entry of this order.

New Orleans, Louisiana, this 19th day of March, 2012.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE